UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 04-3280(DSD/JJG)

Riley B. Housley, III and
Kathleen Sullivan,

       Plaintiffs,

v.                                                                                                    **ORDER**

City of Edina, Edina Police
Officer Brandon Deshler, Edina
Police Officer Erik Kleinberg,
City of Minneapolis, Minneapolis
Police Officer Hofius, Minneapolis
Police Officer Ketzner, Police
Officers Federation of Minneapolis,
John Doe and Mary Roe, Edina and/or
Minneapolis police offers whose names
are unknown at this time,

       Defendants.


    Barbara R. Kueppers, Esq. Kueppers Law Office and Roy D. Hawkinson, Esq., Hawkinson Law Office, 1455 West Lake Street, Suite 308, Minneapolis, MN 55408 counsel for plaintiffs.

    Mark P. Hodkinson, Esq., Susan E. Gustad, Esq. and Bassford Remele, P.A., 33 South Sixth Street, Suite 3800, Minneapolis, MN 55402, counsel for City of Edina, Officers Deshler and Kleinberg.

    C. Lynne Fundingsland, Assistant City Attorney, 333 South Seventh Street, Suite 300, Minneapolis, MN 55402, counsel for City of Minneapolis and Officers Hofius and Ketzner.

    Karin E. Peterson, Esq., Ann E. Walther, Esq. and Rice, Michels & Walther, 10 Second Street N.E., Suite 206, Minneapolis, MN 55413, counsel for Police Officers Federation of Minneapolis.


    This matter is before the court on defendants' motions for summary judgment pursuant to Federal Rule of Civil Procedure 56.

Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants defendants' motions in part and dismisses plaintiff's state-law claim without prejudice.

**BACKGROUND**

Plaintiffs Riley Housley, III ("Housley"), and Kathleen Sullivan ("Sullivan") commenced this 42 U.S.C. § 1983 action against defendants Edina police officer Brandon Deshler ("Deshler"), Edina police detective Eric Kleinberg ("Kleinberg"), Minneapolis police officer Chad Hofius ("Hofius") and Minneapolis police officer Bruce Ketzner ("Ketzner"), alleging Fourth and Eighth Amendment rights violations. Plaintiffs' claims arise out of the execution of a search warrant at their business and place of residence. Plaintiffs also assert claims against defendants City of Edina and City of Minneapolis for failure to adequately train their respective officers. Additionally, Housley asserts a state-law defamation claim against defendant Police Officers' Federation of Minneapolis ("Federation") for its account of a 1979 shooting in which Housley was involved.

On December 13, 1979, Housley, acting on the mistaken belief that his home was being burglarized, shot two plainclothes Minneapolis police officers, David Mack ("Mack") and Robert Skomra. Housley was charged with counts of attempted murder, first degree assault and second degree assault. He was later acquitted of all

charges.  The Federation's website recounts the shooting and subsequent death of Mack, and Housley alleges that the site contains factual inaccuracies.

In 1994, Housley started Digital Consulting Services, Inc. ("DCS"), a computer sales and service company.  He also founded and manages Ammoclip.com, an internet business specializing in the sale of ammunition magazines.  Housley operates DCS and Ammoclip.com out of a building at 204 Lowry Avenue Northeast, Minneapolis, Minnesota ("204 Lowry"), which Sullivan owns.  Sullivan and Housley also live in the building on the same floor as Housley's DCS operation.  Their apartment is accessible through the Lowry Avenue door as well as through an entrance at 2427 Second Avenue Northeast, Minneapolis, Minnesota.  Justin Harris ("Harris"), an independent contractor, worked for Housley occasionally at DCS.  When Harris left the state, Housley allowed him to store several boxes of personal belongings at 204 Lowry.

On July 3, 2003, Edina police officer Kevin Rofidal ("Rofidal") stopped a car on suspicion of drug-related activity. (Rofidal Dep. at 10-13.)  One of the passengers fled the scene. The remaining occupants informed Rofidal that the man who fled was Harris and provided Rofidal with a phone number for him.  Because Rofidal is a patrol officer and does not typically perform investigations, the task of identifying and locating Harris was assigned to Kleinberg.

On July 17, 2003, Kleinberg called the number provided and reached DCS. Housley answered the phone and stated that he knew Harris but that Harris was not present at the time. Housley confirmed that he had information regarding Harris at his office and that boxes with Harris's personal belongings were being stored on the premises; Housley hung up when Kleinberg sought further information. (Kleinberg Dep. at 31.) Based on experience, Kleinberg believed that DCS would maintain relevant information about its employees which would lead to finding Harris. (Id. at 30-31.) Kleinberg therefore filled out an application for a search warrant at 204 Lowry for information, writings, paper and documents that identified Harris. (See Gustad Aff. Ex. C.) He personally presented the application to Hennepin County District Court Judge Janet Poston on July 17, 2003, and she signed the warrant in his presence. (Kleinberg Dep. at 24-26.)

After obtaining the warrant, Kleinberg went to 204 Lowry while Rofidal and Deshler went to the Second Precinct of the Minneapolis Police Department. At the precinct, they met Hofius and Ketzner, who would assist the Edina officers in serving the search warrant. A uniformed Minneapolis officer customarily accompanies officers from other jurisdictions when they execute search warrants within the City of Minneapolis. (Hofius Dep. at 29.)

At approximately 4:00 p.m., the officers met at 204 Lowry and found the building locked. Minutes later, Housley arrived,

approached the officers and asked what was happening. A uniformed officer requested Housley's identification, and upon receiving it, Kleinberg handed Housley an unsigned copy of the warrant. (Kleinberg Dep. at 58-59.) Kleinberg noted Housley's identity and told Hofius that Housley previously had been involved with the shooting of a Minneapolis police officer. (Id. at 64-65.) Housley questioned the unsigned warrant's validity and attempted to call his attorney. Hofius then arrested Housley for obstruction of legal process, handcuffed him with his hands behind his back and placed him in a Minneapolis police squad car. The Edina and Minneapolis officers then commenced their search of the premises.

Upon encountering locked fire doors within the building, Rofidal went to the squad car and asked Housley for keys or the code for the doors, but Housley refused to respond. (Rofidal Dep. at 62-63.) Kleinberg later made the same request and Housley again refused, saying he would not open the doors without Sullivan's permission. (Kleinberg Dep. at 83-84.) Housley claimed that the area behind the doors was a private area unrelated to DCS and thus should not be searched. The officers eventually broke down the doors to continue their search. (Id. at 72.) Beyond the doors, officers found rows of industrial shelves containing merchandise from Ammoclip.com, computer hardware and DCS materials. (Id. at 90-91.) Officers also discovered a secret door, disguised to blend into the wall paneling, which led to a small bedroom. (Id. at 70-

71.) The search ended shortly after officers found information about Harris. (Rofidal Dep. at 84-86; Kleinberg Dep. at 112-13.)

While the officers conducted the search, Housley remained handcuffed in the back of the squad car. Hofius left the car running with the air conditioning on and checked on Housley three or four times during the search, which lasted several hours. (Hofius Dep. at 66-67, 74.) Hofius then took Housley to be booked, processed, cited and released. (Housley Dep. at 118-20, 127.) Hofius cleared the matter in its entirety and was prepared for other work by 7:40 p.m. Following his detention, Housley sought medical treatment for permanent and continuing physical damage to his wrists as a result of being handcuffed during the search. Sullivan also sought medical treatment for depression and anxiety in the years following the incident. (Sullivan Dep. at 12.)

Plaintiffs filed this action against defendants Deshler, Kleinberg, Ketzner and Hofius and the cities of Edina and Minneapolis alleging that defendants violated their Fourth Amendment rights during the search of 204 Lowry and Housley's Eighth Amendment rights during his detention. Plaintiffs also claim the cities of Edina and Minneapolis inadequately trained their officers in the areas of warrant service, prisoner transportation and the use of assaultive comments. Finally, Housley asserts a defamation claim against defendant Federation for

6

the content of its website related to the 1979 shooting of Mack.[1] Defendants move for summary judgment on all of plaintiffs' claims.[2]

### DISCUSSION

**I.   Summary Judgment Standard**

The moving party in a motion for summary judgment will prevail if it demonstrates to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) **(citing Fed. R. Civ. P. 56(c))**. A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon

---

[1] Plaintiffs agreed at oral argument to dismiss all claims against Minneapolis police officer Bruce Ketzner. Further, plaintiffs have not opposed Edina detective Brandon Deshler's motion for summary judgment, and the court now grants summary judgment on all claims against him.

[2] In their response brief, plaintiffs argue that the police officers, City of Edina and City of Minneapolis are responsible for "property damage" and "emotional distress." (See Pls.' Resp. to Defs.' Mot. for Summ. J. at 15, 20.) However, plaintiffs did not plead these matters as cognizable legal claims, and the court will not address these issues.

mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324.  Moreover, if a nonmoving party cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

**II.  Section 1983 Claims**

    **A.  Officers Kleinberg and Hofius**

Plaintiffs allege that Kleinberg and Hofius violated their Fourth and Eighth Amendment constitutional rights by improperly executing a search warrant, unlawfully detaining Housley and using excessive force in arresting him.  Police officers performing discretionary functions are shielded from liability for civil damages to the extent their conduct does not violate "clearly established statutory or constitutional rights" of which a "reasonable person" would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  To determine whether qualified immunity applies, the court considers the "objective legal reasonableness" of an officer's conduct in light of the information he or she possessed at the time of the alleged violation. Winters v. Adams, 254 F.3d 758, 766 (8th Cir. 2001).  An officer will be immune if it is objectively obvious that a reasonably competent officer could have concluded that the disputed action was proper. See Malley v.

Briggs, 457 U.S. 335, 341 (1986).  Qualified immunity gives room for reasonable error, protecting all but the plainly incompetent or knowingly disobedient so that a police officer is not forced to err on the side of caution out of fear of being sued.  See Hunter v. Bryant, 502 U.S. 224, 229 (1991).

The applicability of qualified immunity is a question of law analyzed in three parts.  See Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  The court determines whether (1) plaintiffs have asserted a violation of a cognizable constitutional right, (2) the applicable law pertaining to the constitutional right in question was clearly established at the time of the violation, and (3) any material issues of fact exist as to the objective reasonableness of an officer's actions in light of the law and information he or she possessed at the time.  See id.; Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666-67 (8th Cir. 1992).  If a plaintiff has failed to establish a violation of a constitutional right, no additional inquiry is necessary, and the officer is entitled to qualified immunity.  See Saucier v. Katz, 533 U.S. 194, 201 (2001).

### 1. Search of 204 Lowry

Plaintiffs assert two challenges to the search at 204 Lowry based on the warrant executed on July 17, 2003: (1) that the search was invalid because the officers did not serve a signed warrant on Housley and (2) that the search exceeded the scope of the warrant.

The Fourth Amendment prohibits unreasonable searches and seizures and requires that warrants be issued "upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. Thus, to be valid, a search warrant must bear the signature of a judge authorizing the search. See United States v. Bach, 301 F.3d 1063, 1067 (8th Cir. 2002). The lack of a signature on the warrant actually served, however, is at most a technical error and does not render the search unconstitutional. See United States v. Lipford, 203 F.3d 259, 270 (4th Cir. 2000); United States v. Kelley, 140 F.3d 596, 602 n.6 (5th Cir. 1998). It is undisputed that Judge Poston signed the search warrant before the officers executed the search. (Kleinberg Dep. at 24-26; Gustad Aff. Ex. C.) The officers' failure to present a signed copy to Housley did not render the warrant constitutionally invalid. Therefore, the search conducted pursuant to the warrant did not violate plaintiffs' Fourth Amendment rights.

As to the search, plaintiffs argue that the officers exceeded the scope of the warrant by searching beyond the fire doors and into the residential area. The Fourth Amendment requires that a warrant "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. When the search location is ambiguously subdivided, officers may search the entire premises without exceeding the scope of the warrant. See United States v. Stefonek, 179 F.3d 1030, 1032 (7th Cir. 1999)

10

(search of area adjacent to offices identified in warrant valid because one entrance led to all areas and division of interior was obscure); <u>United States v. Ofshe</u>, 817 F.2d 1508, 1514 (11th Cir. 1987) (search valid where one door led to several offices and officers did not know when warrant was issued that the interior of premises was subdivided).

The warrant authorizes a search of 204 Lowry for "[i]nformation, writings, paper and documents that identify 'Justin Harris.'" (Gustad Aff. Ex. C.) That the warrant does not distinguish between a residential versus business use of the building at 204 Lowry is inconsequential. The warrant stated with particularity the items to be seized and the location to be searched. Further, the area behind the fire doors was replete with business materials, including industrial shelves full of ammunition magazines, computer equipment and DCS letterhead. (Kleinberg Dep. at 90-91). Therefore, even if the officers were restricted to searching the business areas of the premises, which they were not, they would not have been able to discern where those areas began and ended. (<u>See</u> Kleinberg Dep. at 72-75.) Accordingly, their search did not exceed the scope of the warrant and cannot be considered unconstitutional.

Plaintiffs have not asserted a cognizable Fourth Amendment violation based upon the execution of the search warrant at 204 Lowry. Moreover, even if plaintiffs alleged such a Fourth

11

Amendment violation, they have failed to establish how the conduct of Kleinberg or Hofius in executing the search was objectively unreasonable. Therefore, defendants are entitled to qualified immunity on these claims.

### 2. Unlawful Detention and Excessive Force Claims

Housley alleges in the complaint that the officers detained him during the search in violation of the Eighth Amendment's prohibition of unreasonable punishment. (Compl. at 11.) However, Eighth Amendment protection does not attach until after conviction and sentencing, and therefore Housley's claims of unlawful detention and excessive force are properly analyzed under the Fourth Amendment. See Ingraham v. Wright, 430 U.S. 651, 671 n.40 (1977).

As an initial matter, Housley's Fourth Amendment claims against Kleinberg fail because Housley has not established that Kleinberg arrested, handcuffed or detained him. Rather, Housley was arrested by Hofius and placed in a Minneapolis squad car. Therefore, the court grants Kleinberg's motion fo summary judgment as to these claims.

#### a. Unlawful Detention

Officers executing a search warrant can detain occupants of the premises while a search is conducted. See Michigan v. Summers, 452 U.S. 692, 705 (1981); United States v. Roberson, 439 F.3d 934, 940 (8th Cir. 2006). Such detention is appropriate even if it

12

lasts several hours, see Muehler v. Mena, 544 U.S. 93, 98-100 (2005), because it represents only an "incremental intrusion on personal liberty" if the search was authorized by a valid warrant. Summers, 452 U.S. at 703. Further, any intrusiveness is outweighed by law enforcement interests in "(1) preventing flight; (2) minimizing the risk of harm to the officers; and (3) conducting an orderly search." United States v. Wallace, 323 F.3d 1109, 1111 (8th Cir. 2003) (citations omitted).

For the reasons already stated, the search of 204 Lowry was executed pursuant to a valid search warrant. Accordingly, Hofius had authority to detain Housley, an occupant of the premises, while the officers executed that warrant. Moreover, under Muehler, the court finds that Housley's detention for several hours in the squad car was objectively reasonable. 544 U.S. at 98-100. Therefore, Housley has not alleged a violation of his Fourth Amendment rights based on his detention in the squad car.

### b.   Excessive Force

Officers may use reasonable force to effectuate a lawful detention. See Graham v. Connor, 490 U.S. 386, 396 (1989). The reasonableness of the force used depends on the "facts and circumstances of each particular case" and is judged from the perspective of a reasonable officer on the scene "rather than with the 20/20 vision of hindsight." Id.

There is no evidence that Hofius, the arresting officer, acted unreasonably while detaining Housley. Hofius followed proper handcuffing procedure, checking the amount of space between the handcuffs and Housley's wrists and double locking the handcuffs to prevent tightening. (Hofius Dep. at 56-57.) Housley's claims against Hofius, therefore, do not amount to Fourth Amendment violations, and Hofius is entitled to qualified immunity. See Malley, 457 U.S. at 341.

**B.   Cities of Edina and Minneapolis**

**1.   Municipal Liability**

Municipalities cannot be held liable for a constitutional violation under § 1983 on a respondeat superior theory. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Rather, they may be liable only if the execution of their policies or customs resulted in the deprivation of a constitutional right. See id. at 694; Yellow Horse v. Pennington County, 225 F.3d 923, 928 (8th Cir. 2000). The court has determined that plaintiffs have not established a violation of their constitutional rights. Further, plaintiffs have cited no policy or custom of the Cities of Edina or Minneapolis at the root of the alleged constitutional violations. Therefore, summary judgment is warranted.

**2.   Inadequate Training**

Plaintiffs argue that defendants cities of Edina and Minneapolis provided their police officers with inadequate training

14

in the areas of warrant service, prisoner transportation and the use of assaultive comments.  There are limited circumstances in which a "failure to train" allegation can be a basis for liability pursuant to § 1983, but this is only the case where the failure to train amounts to "deliberate indifference to the rights of persons with whom the police come into contact."  City of Canton v. Harris, 489 U.S. 375, 388 (1989); see Larkin v. St. Louis Hous. Auth. Dev. Corp., 355 F.3d 1114, 1117 (8th Cir. 2004).  Plaintiffs have presented no evidence of a failure to train or deliberate indifference behind any such failure by either city.  The court therefore grants summary judgment in favor of defendants cities of Edina and Minneapolis on these claims.

**III.   State-Law Defamation Claim**

Housley argues that the Foundation defamed him by providing false information in its website description of the Mack shooting. The court has supplemental jurisdiction over all claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367.  Under § 1367(c)(3), the court can decline to exercise supplemental jurisdiction over a claim in which the court has "dismissed all claims over which it has original jurisdiction." Id. § 1367(c)(3).  The court has granted defendants' motions for summary judgment on all claims within its original jurisdiction and now declines to exercise supplemental jurisdiction over the

15

remaining state-law defamation claim.  See Eddings v. City of Hot Springs, Ark., 323 F.3d 596, 600 (8th Cir. 2003); cf. Gergoire v. Class, 236 F.3d 413, 419-20 (8th Cir. 2000).  Accordingly, Housley's defamation claim is dismissed without prejudice.

**CONCLUSION**

Therefore, **IT IS HEREBY ORDERED** that:

1.   Plaintiffs' claims against Minneapolis Police Officer Bruce Ketzner are dismissed with prejudice.

2.   Defendants Erik Kleinberg's, Brandon Deshler's and City of Edina's motion for summary judgment [Doc. No. 28] is granted.

3.   Defendants Chad Hofius's and City of Minneapolis's motion for summary judgment [Doc. No. 37] is granted.

4.   Plaintiff Housley's defamation claim against defendant Police Officers' Federation of Minneapolis is dismissed without prejudice.

5.   Defendant Police Officer's Federation of Minneapolis's motion for summary judgment [Doc. No. 26] is denied as moot.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:   January 5, 2007

                                        s/David S. Doty
                                        David S. Doty, Judge
                                        United States District Court